UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

GLORIA GUTIERREZ,　　　　　　　　　)　　No. CV-10-48-LRS
　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　)
　　　　　　　　　　　　　　　　　　)　　**ORDER DENYING**
v.　　　　　　　　　　　　　　　　　)　　**DEFENDANT'S MOTION FOR**
　　　　　　　　　　　　　　　　　　)　　**SUMMARY JUDGMENT**
GRANT COUNTY, a Washington　　　　 )
municipal corporation,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　)

**BEFORE THE COURT** is the Defendant's Motion For Summary Judgment (Ct. Rec. 10). The motion is heard without oral argument.

**I. BACKGROUND**

Plaintiff was employed by Grant County as a Treatment Coordinator Assistant with the Prevention and Recovery Center (PARC). On April 29, 2009, Plaintiff filed a written request for leave under the Family Medical Leave Act ("FMLA") which was granted. While on leave, Plaintiff was advised by a letter dated September 2, 2009, that she was being laid off from her position effective September 15, 2009. Plaintiff's Complaint alleges this was in violation of her rights under the FMLA, and in violation of Washington public policy.

Plaintiff now concedes her claim for discharge in violation of public policy is precluded by the FMLA and should be dismissed. Accordingly, that claim is

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -1**

**DISMISSED**, leaving only the FMLA interference and FMLA retaliation claims to be adjudicated on their merits.

## II. DISCUSSION

### A. Summary Judgment

#### 1. Fed. R. Civ. P. 56 Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -2**

claim. *Celotex*, 477 U.S. at 322-23.

### B. FMLA

The FMLA prohibits adverse employment actions against an employee for taking leave under the Act. It is unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. Section 2615(a)(1). The FMLA recognizes two separate claims for violation of its provisions: 1) interference claims in which employers burden or outright deny substantive statutory rights to which an employee is entitled under 29 U.S.C. Section 2615(a)(1); and 2) retaliation claims in which employers discharge employees for exercising their FMLA right to leave under 29 U.S.C. Section 2615(a)(2). *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). In the Ninth Circuit, claims alleging that an employer took adverse employment action against an employee for taking or asserting a right to take FMLA leave are treated as Section 2615(a)(1) interference claims, rather than Section 2615(a)(2) discrimination claims. *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1133, fn. 7 (9th Cir. 2003).

### 1. Interference

The FMLA "creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." *Bachelder*, 259 F.3d at 1122 (citing 29 U.S.C. Sections 2612(a) and 2614(a)). Employers cannot use the taking of FMLA leave as a negative factor in employment actions. *Id.* at 1124, citing 29 C.F.R. Section 825.220(c). This is because an employer's attachment of negative consequences to an employee's exercise of medical leave rights "tends to chill," and therefore interferes with, the employee's willingness to exercise those rights. *Id*.

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -3**

In order to prevail on an interference claim, a plaintiff must prove by a preponderance of the evidence that her taking of FMLA protected leave constituted a negative factor in the adverse employment action taken against her. *Id*. at 1125.  Evidence can be direct or circumstantial. *Id*. Evidence that an employer failed to reinstate an employee who was out on FMLA leave to her original (or an equivalent) position establishes a prima facie denial of the employee's FMLA rights. *Sanders v. City of Newport*, _____ F.3d. _____, 2011 WL 905998 at *5, citing 29 C.F.R. Section 825.220(b) (2008). The elements of an employee's prima facie case where the employer fails to reinstate the employee require the employee to establish: 1) she was eligible for the FMLA's protections; 2) her employer was covered by the FMLA; 3) she was entitled to leave under the FMLA; 4) she provided sufficient notice of her intent to take leave; and 5) her employer denied her FMLA benefits to which she was entitled. *Id*. Here, there is no dispute that Plaintiff has satisfied the first four elements. Importantly, in interference claims, the employer's intent is irrelevant to a determination of liability. *Id*.

The right to reinstatement after taking FMLA leave is limited. According to the FMLA, 29 U.S.C. Section 2614(a)(3)(B):

> Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit or position to which the employee would have been entitled had the employee not taken leave.

When, however, an employer seeks to establish that he has a legitimate reason to deny an employee reinstatement, the burden of proof rests with the employer. "The plain language of the pertinent DOL [Department of Labor] regulations provides that the burden is on the employer to show that [it] had a legitimate reason to deny an employee reinstatement." *Sanders* at *7 (citing 29 C.F.R. Sections 825.214, 825.216(a), and 825.312(d)).

In order to survive summary judgment, Plaintiff must submit evidence that

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -4**

would allow a factfinder to conclude Grant County considered Plaintiff's leave as a negative factor in eliminating her job as Treatment Coordinator Assistant. If Grant County would have laid off the Plaintiff even if she had not taken FMLA leave, Plaintiff is not entitled to be restored to her position of employment. Defendant asserts Plaintiff's job was eliminated because of budget cuts and that the elimination of her position had "absolutely nothing to do with the fact she was on leave." After a thorough review of the record, the court is not persuaded this is the only conclusion a jury could reach. The court concludes Plaintiff has presented sufficient circumstantial evidence that would allow a factfinder to conclude Grant County considered Plaintiff's FMLA leave as a negative factor in eliminating her job.

      Jalane Christian-Stoker is the Director of Grant Integrated Services (GrIS). Discussed during the budget process in 2008 was a merger of PARC into GrIS, but the Board of County Commissioners (BOCC) opted to hold off for a year. Christian-Stoker discussed merger possibilities with Jennifer Lane, Director of PARC, in March or April 2009. (Ct. Rec. 13 at Paragraphs 2 and 4). In late June 2009, Christian-Stoker was advised by the BOCC to proceed with the integration of PARC into GrIS for budgetary reasons. (Ex. B to Ct. Rec. 14 ). On July 2, 2009, the BOCC appointed Christian-Stoker as the interim director to oversee the merger/integration. (Ex. F to Ct. Rec. 19 at p. 136). As the merger was being planned, Christian-Stoker says she was receiving forecasts that the State would be cutting its funding of PARC in the range of 25% to 30%. (Ct. Rec. 13 at Paragraph 4).

      In an e-mail she authored dated July 1, 2009 (Ex. C to Ct. Rec. 14), Christian-Stoker stated that "Payroll is taken care of and the finances seem to be taken care of for the time being." She noted "[t]he State interim 3-month contract is at least 25% less than the last biennium contract, but we have preliminarily agreed to make no staffing changes until the final contract comes out in

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -5**

September/October." There is no indication in the record, however, regarding the terms of the final contract and how much less it was compared to the previous biennium contract. At her deposition, Christian-Stoker was unable to pinpoint the source of her information that there would be a potential 25% to 30% cut in funding, and could not recall when the funding cut occurred and how much it ended up being for the subsequent biennium contract (apparently 2010-11). (Ex. E to Ct. Rec. 19 at pp. 85-92). According to Christian-Stoker, "there was talk of budget reductions that would result in what we were guesstimating to be a 25 to 30 percent reduction in PARC funding." (*Id*. at p. 96). She also acknowledged that she did not have firm knowledge regarding the finances of PARC in August 2009 (*Id*. at pp. 94-95), and that to her knowledge, no one had made any attempt to contact Jennifer Lane to get her input on financial issues pertaining to PARC. (*Id*. at p. 101). Christian-Stoker does not believe she ever spoke to Plaintiff about her job duties at PARC and does not recall anyone ever telling her they thought her job was expendable. (*Id*. at pp. 111-112). Although Christian-Stoker testified the decision to lay off the Plaintiff was a joint decision of the "Management Team and Leadership Team," (*Id*. at p. 115), Grant County Human Resources Specialist Susan Wolf testified that Christian-Stoker made the decision by herself (Ex. C to Ct. Rec. 19 at Wolf Dep. at pp. 52-54). Christian-Stoker acknowledged that Wolf was a member of the Leadership Team. (Ex. E to Ct. Rec. 19 at p. 107).

In a letter to the Grant County Human Resources Director dated August 28, 2009, (Ex. D to Ct. Rec. 14), Christian-Stoker wrote that the interim management team of PARC and the leadership team of GrIS had met "and determined essential reorganization priorities for PARC in order to meet fiscal year 2009-2011 budget reductions." The letter stated that "[a] 30% reduction in funding to PARC will negatively impact the agency's ability to maintain substance abuse/dependency services to Grant County without drastic cuts to current agency organization" and therefore, recommended the following staffing changes: 1) elimination of the

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -6**

County Coordinator position at PARC (held by Jennifer Lane); 2) elimination of the positions of CDP (Chemical Dependency Counselor) I, CDP II and Co-Occurring Facilitator, to be replaced with a single CDP position; 3) the hiring of a full-time Program Manager at PARC; 4) the hiring of a Treatment Supervisor at PARC; 5) the elimination of the Treatment Coordinator Assistant position (Plaintiff's position); and 6) the elimination of an Extra Help Support hourly position. The elimination of Plaintiff's position was indicated to be $50,401, slightly less than the total net savings ($60,704) from all of the staffing changes. The letter stated the essential duties of the Treatment Coordinator Assistant position would "be assumed by other PARC clerical staff due to efficiencies created by teaching the staff to use the County's electronic payroll and voucher system."

In her letter to Plaintiff dated September 2, 2009 (Ex. M to Ct. Rec. 14), advising Plaintiff she was being laid off, Christian-Stoker wrote that PARC was "experiencing a significant cut in budget this year," and that it was "anticipated that the shortfall will not improve, and in fact may continue to worsen throughout 2009." Plaintiff was advised that during the six month period during her layoff, she would be considered for recall if a suitable position became available and provided she filed a written request with Human Resources to be considered for recall.[1]

Jennifer Lane served as the Director of PARC for 13 years. (Ex. B to Ct. Rec. 19 at p. 27). During her deposition, Lane testified that in June 2009, she understood there would be reductions in future contracts because of reductions in the State's budget. Although one of those reductions had materialized at that time, amounting to between $2,000 and $5,000, Lane testified she had not been notified

---

[1] This is consistent with Section 5.5. of the Grant County employment handbook.

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -7**

of a specific total percentage reduction, such as a 30% reduction. (*Id*. at pp. 28-29). According to Lane, prior to her leaving, it was not clear "what actual reductions would occur in current or future contracts." (*Id*. at p. 34). She testified that in anticipation of a possible reduction in funding, certain measures had been taken to maintain the same level of service and the same staffing level. (*Id*. at pp. 31-32). She testified that PARC had a sufficient cash balance on hand that even in the worst case scenario, current operations could be maintained for 12 to 18 months. (*Id*. at pp. 34-35). She was adamant that she did not leave PARC "in a financial hardship." (*Id*. at p. 32). It is noted that Lane went out on medical leave in June 2009 (Ex. E to Ct. Rec. 19 at p. 80), and was on such leave when her position was eliminated. This is confirmed by the September 1, 2009 letter she received from the Grant County Human Resources Department advising that the county had "determined that substantial and grievous economic injury to Grant County operations will result if you are reinstated to your position as PARC Administrator upon return from FMLA leave as this position has been eliminated." (Ex. F to Ct. Rec. 19 at p. 138).

      Christian-Stoker's inability to provide specific details regarding the justification for eliminating Plaintiff's position, juxtaposed with Lane's testimony regarding PARC's financial situation in 2009, compels the court to conclude a genuine issue of material fact exists as to whether Plaintiff's use of FMLA leave was a negative factor in the decision to eliminate Plaintiff's position. This is particularly so since the elimination of the position occurred during Plaintiff's use of leave. Close temporal proximity between protected leave and a decision to eliminate a position may alone be enough to ward off summary judgment. *Reid v. Smithkline Beecham Corp.*, 366 F.Supp.2d 989, 998 (S.D. Cal. 2005).

      There is other circumstantial evidence in the record from which a jury could infer that Plaintiff's use of FMLA leave was a negative factor. Before she was promoted to the position of Treatment Coordinator Assistant, Plaintiff served as a

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -8**

receptionist for PARC. Plaintiff testified she continued to do receptionist work while employed as a Treatment Coordinator Assistant up until the time her position was eliminated. In June 2009, Anna Ayala was hired as a temporary employee to perform the receptionist work. (Ex. A to Ct. Rec. 19 at pp. 9-10). After Plaintiff's Treatment Coordinator Assistant position was eliminated, an Admitting Assistant position came open with GrIS. Plaintiff applied for this position and was interviewed, but was not hired. (*Id*. at pp. 19-22).[2] Instead, Anna Ayala was hired for the position. Christian-Stoker said it was her understanding that Ayala, as a temporary employee, could not be terminated from her position, but Christian-Stoker could not provide the source or the basis for that understanding. Christian-Stoker added that it was her understanding that the staff was pleased with the job Ayala was doing and that PARC had a six month contract with the temporary employment agency for her services. (Ex. E to Ct. Rec. 19 at. at pp. 116-118). Thus, according to Christian-Stoker, "[t]here didn't appear to be a need to change what we had." (*Id*. at p. 118). At her deposition, Lane, who was still the Director of PARC when Ayala was hired as a temporary employee, testified there was actually a disincentive to hire a temporary employee as a permanent employee because doing so necessitated the payment of a fee to the temporary employment agency in order to gain a release from the temporary employment contract. She also testified that it was not necessary to keep a temporary employee for any specific amount of time if it was determined his or her services were no longer necessary. (Ex. B to Ct. Rec. 19 at pp. 37; 41-42).

  While Plaintiff was not necessarily legally entitled to or guaranteed the

---

[2] Plaintiff applied for the job within six months of being laid off (Gutierrez Dep. at p. 65), although per Sections 5.5 and 5.6 of the Grant County employment handbook, she was entitled to consideration for the position without the necessity of formally applying and interviewing for the position.

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -9**

Admitting Assistant position under Grant County employment policies (specifically Sections 5.5 and 5.6 of the Grant County employment handbook), the circumstances surrounding her not being offered the position constitute evidence from which a jury could draw a reasonable inference that Plaintiff's use of FMLA leave was a negative factor in the decisions to eliminate her Treatment Coordinator Assistant position and to subsequently not offer her the Admitting Assistant position.

### 2. Retaliation

The anti-retaliation and anti-discrimination provisions of 29 U.S.C. Section 2615(a)(2) and (b),"[b]y their plain meaning . . . do not cover visiting negative consequences on an employee simply because [s]he has used . . . leave." *Bachelder*, 259 F.3d at 1124. In *Bachelder,* the Ninth Circuit described FMLA claims for retaliation or discrimination as those where an employer is accused of discriminating against an employee for opposing practices made unlawful by the FMLA, or for instituting or participating in FMLA proceedings or inquiries. *Id*. The *McDonnell Douglas*[3] burden-shifting framework applies to claims for retaliation and/or discrimination, but does not apply to FMLA interference claims. *Id*. at 1125.

Plaintiff claims her job was eliminated because she was on FMLA leave. Plaintiff registered her opposition to that adverse employment action, however that opposition could not have resulted in retaliation or discrimination because by the time she registered it, the adverse employment action had already taken place in that her job had been eliminated. Whether that adverse employment action was unlawful under the FMLA remains to be determined. Plaintiff's claim is solely an interference claim under the FMLA and her FMLA retaliation claim must be

---

[3] *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

**ORDER DENYING MOTION**
**FOR SUMMARY JUDGMENT -10**

dismissed. If Plaintiff's FMLA rights have been violated, she will be made whole through her interference claim.

### III.  CONCLUSION

Plaintiff's FMLA retaliation claim and Washington public policy claim are **DISMISSED**. For the reasons stated above, Defendant's Motion for Summary Judgment regarding Plaintiff's FMLA interference claim (Ct. Rec. 10) is **DENIED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this order and provide copies to counsel.

**DATED** this 2nd day of May, 2011.

*s/Lonny R. Suko*
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION
FOR SUMMARY JUDGMENT -11**