1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

8
9
10
11
12
13
14
15

| | | |
|---|---|---|
| GLORIA GUTIERREZ, | ) | No. CV-10-48-LRS |
| | ) | |
| Plaintiff, | ) | **ORDER DENYING** |
| | ) | **DEFENDANT'S MOTION TO** |
| v. | ) | **SET ASIDE JURY VERDICT** |
| | ) | **AND FOR A NEW TRIAL,** |
| GRANT COUNTY, a Washington | ) | *INTER ALIA* |
| municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

16
17
18
19

    **BEFORE THE COURT** are the Defendant's Motion To Set Aside Jury
Verdict And For A New Trial (ECF No. 83) and Plaintiff's Motion For Award Of
Front Pay, Interest And Liquidated Damages (ECF No. 69).  These motions are
heard without oral argument.

20
21

**NEW TRIAL**

22
23
24
25
26
27
28

    Fed. R. Civ. P. 59(a) provides that a court may grant a new trial "for any
reason for which a new trial has heretofore been granted in an action at law in
federal court."  Rule 59 does not specify the grounds on which a motion for new
trial may be granted.  *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th
Cir. 2003).  Rather, the court is "bound by those grounds that have been
historically recognized."  *Id*.  Historically recognized grounds for a new trial
include a verdict that is against the weight of the evidence, damages that are

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 1**

1   excessive, or a trial that was not fair to the moving party. *Molski v. M.J. Cable,*
2   *Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).  A new trial may be granted only if, after
3   weighing the evidence as the court saw it, "the verdict is contrary to the clear
4   weight of the evidence, is based upon false or perjurious evidence, or to prevent a
5   miscarriage of justice." *Id*. (quoting *Passantino v. Johnson & Johnson Consumer*
6   *Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)).
7           Defendant asserts the record "is replete with testimony that the decision to
8   eliminate plaintiff's position was done for legitimate financial and administrative
9   reasons unrelated to her leave status."  Defendant points out what that testimony
10  is, just as it did to this court on summary judgment and just as it did before the jury
11  at trial.  This court denied summary judgment, concluding the Plaintiff had
12  presented sufficient circumstantial evidence that would allow a factfinder to
13  determine Grant County considered Plaintiff's FMLA leave as a negative factor in
14  eliminating her job.  (ECF No. 23).  This same evidence, and other evidence,
15  persuaded the jury to find Defendant's reasons for denying the Plaintiff's request
16  for reinstatement to employment was not legitimate and unrelated to her taking of
17  FMLA leave.[1]  The jury's verdict was not contrary to the clear weight of the
18  evidence presented at trial.  The court is not left with "the definite and firm
19  conviction that a mistake has been committed." *Landes Construction Co., Inc. v.*
20  *Royal Bank of Canada*, 833 F.2d 1365, 1371-72 (9th Cir. 1987).

21

22  **PREJUDGMENT INTEREST**

23          Prejudgment interest is an element of compensation, not a penalty.  Its
24  purpose is to make the aggrieved party whole. *Dishman v. UNUM Life Ins. Co. of*

25  _____

26          [1] For all intents and purposes, the jury found that Defendant viewed
27  Plaintiff's FMLA leave as a "negative factor" in denying her request for
28  reinstatement.

**ORDER DENYING MOTION**
**FOR A NEW TRIAL, *INTER ALIA* - 2**

*America*, 269 F.3d 974, 988 (9th Cir. 2001).  Prejudgment interest must be calculated according to either the rate of interest published by the Board of Governors of the Federal Reserve System, 28 U.S.C. Section 1961(a)[2], or the "prime rate."[3]  *See Hite v. Vermeer Mfg. Co.*, 361 F.Supp.2d 935, 949 (S.D. Iowa 2005), *affirmed* 446 F.3d 858 (8th Cir. 2006).  The current "prime rate" is 3.25%.  Considering the compensatory purpose of prejudgment interest, this court finds the "prime rate" is a fair measure for prejudgment interest, especially in light of the historical reduction of interest rates while this case has been pending.

The jury awarded Plaintiff $27,712.67 in compensatory damages pursuant to the FMLA, 29 U.S.C. Section 2617(a)(1)(A)(i).  The FMLA requires that interest on that amount be calculated at "the prevailing rate."  29 U.S.C. Section 2617(a)(1)(A)(ii).  The court will applying a 3.25% interest rate from the date of Plaintiff's termination (September 15, 2009) to the date of final judgment which is the same as the date of this order.

**FRONT PAY**

The court's power under the FMLA to award front pay, as an alternative to reinstatement, is derived solely from 29 U.S.C. §2617(a)(1)(B) which permits the court to award "such equitable relief as may be appropriate."  *Traxler v. Multnomah County*, 596 F.3d 1007, 1012 (9th Cir. 2010).  Reinstatement is inappropriate in this case and the court finds an award of front pay is an

---

[2] Under 28 U.S.C. Section 1961(a), the applicable interest rate is "the average accepted auction price for the last auction of fifty-two week United States Treasury bills settled immediately prior to the date of judgment.

[3] The prime rate is the rate that banks charge for short-term unsecured loans to credit-worthy customers. *Forman v. Korean Airlines Co., Ltd.*, 84 F.3d 446, 450 (D.C. Cir.), *cert. denied*, 519 U.S. 1028, 117 S.Ct. 582 (1996).

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 3**

1   appropriate substitute. Defendant makes no argument that reinstatement was or

2   still is an option for the Plaintiff.

3        Defendant contends that because the Plaintiff found a job with the Moses

4   Lake Community Health Center following the termination of her employment with

5   PARC, quit the same shortly thereafter, and then subsequently obtained another

6   job with the Housing Authority of Grant County, she should not be awarded any

7   front pay. The court, however, agrees with Plaintiff that a rule that eligibility for

8   front pay terminates upon acceptance of new employment would have the effect of

9   discouraging plaintiffs from accepting employment which does not provide as

10   much pay and benefits as the job that was lost. In other words, it would be

11   inconsistent with a plaintiff's duty to mitigate damages and would potentially

12   expose a defendant to greater liability in the long haul while a plaintiff held out for

13   higher wages at a new job.

14        In the case at bar, the jury was specifically instructed that if it found for

15   Plaintiff on her FMLA interference claim, it was to award her "the amount of her

16   lost wages, salary, and employment benefits during the period from September 15,

17   2009, through the date of your verdict, minus the amount of earnings and benefits

18   from other employment received by her during that time." (Instruction No. 9 at

19   ECF No. 58). The jury was also instructed regarding Plaintiff's duty to mitigate

20   her damages such that if "Defendant proved by a preponderance of the evidence

21   that Plaintiff failed to seek out or take advantage of an opportunity that was

22   reasonably available to her, you must reduce her damages by the amount she

23   reasonably could have avoided if she had sought out or taken advantage of such an

24   opportunity." *Id*. The jury's award took into account only the Plaintiff's loss of

25   back pay.

26        Plaintiff's economic expert calculated Plaintiff's front pay loss from May

27   2011 to May 2014, a period of a little more than three years from the date of the

28   verdict (July 2011). Using Plaintiff's compensation at PARC at the time her

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 4**

employment was terminated and calculating that "forward for five years," he compared that with her current rate of pay at the Housing Authority of Grant County to arrive at a total of $18,255.00.  The expert believed five years represented enough time for Plaintiff to recoup the income she had been earning at PARC.  The  fact the expert did not review the collective bargaining agreement which governed Plaintiff's wages with the Housing Authority does not render the expert's calculation unreasonable.  The Defendant did not offer this agreement into evidence and so it is not clear the Plaintiff would in fact have received any raises in pay after 2011.[4]  And as Plaintiff notes, there is no indication that in calculating Plaintiff's pay from PARC forward five years, he took into account any raises the Plaintiff might have received.  Accordingly, the court cannot find the expert's comparison unreasonable.

Defendant contends Plaintiff's expert failed to explain the impact on front pay of the Plaintiff's move from an hourly rate at PARC to a salaried position with the Housing Authority.  Defendant further contends the expert did not make a detailed accounting of any change in benefits that would compensate for any loss in pay Plaintiff suffered by being employed with the Housing Authority instead of PARC.  Defendant did not cross-examine the expert with regard to these specific items and did not offer any of its own expert testimony to counter the testimony of Plaintiff's expert.  Accordingly, the court will not speculate as to any validity these contentions might have and what impact, if any, they might have on the calculation by Plaintiff's expert.  Considering all of the circumstances, the calculation by Plaintiff's expert appears reasonable to this court and does not constitute a windfall to the Plaintiff.  Calculation of front pay is inherently speculative:  "Front pay can only be calculated through intelligent guesswork, and

---

[4]  The expert used Plaintiff's actual earnings with the Housing Authority for 2010 and 2011.

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 5**

we recognize its speculative character  by according wide latitude in its determination to the district courts." *Traxler*, 596 F.3d at 1011, quoting *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007).

Plaintiff will be awarded $18,255.00 in front pay.

**LIQUIDATED DAMAGES**

The FMLA, 29 U.S.C. Section 2617(a)(1)(A)(iii), provides that the court shall award an additional amount as liquidated damages equal to the sum of the compensatory damages awarded by the jury and the prejudgment interest thereon, unless the employer can prove its employment action was taken in "good faith" and that it had "reasonable grounds for believing that [its action] was not a violation."  Liquidated damages are awarded presumptively unless the employer demonstrates its violation was in good faith and that it had a reasonable basis for believing that its conduct was not in violation of the FMLA.  The Eleventh Circuit has found that where the employer acted in subjective good faith, but its conduct was objectively unreasonable, it is not an abuse of discretion to award liquidated damages.  *Cooper v. Fulton County, Georgia*, 458 F.3d 1282, 1288 (11th Cir. 2006).

"Doubling of an award is the norm under FMLA, because a plaintiff is awarded liquidated damages in addition to compensation lost."  *Nero v. Industrial Molding Corp.*, 167 F.3d 921, 929 (5th Cir. 1999).  Liquidated damages under the FMLA are not punitive.  They are compensatory in nature.  *Perksy v. Cendant Corporation*, 547 F.Supp.2d 152, 156 (D.Conn. 2008), quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2nd Cir. 1999)("[l]iquidated damages are not a penalty exacted by the law, but rather compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the [statute]."  See also *DeFreitas v. Horizon Investment & Management Corporation*, 2010 WL 2901616 (D. Utah 2010)("non-discretionary calculation of damages

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 6**

1  under the FMLA should not be considered a 'windfall,' but rather a congressional

2  judgment, enforced by the courts, designed to compensate employees for the

3  obscure damages that occur when one wrongfully loses wages, even if only

4  temporarily").

5      There is strong circumstantial evidence in the record which leads the court

6  to question whether Grant County acted in subjective good faith in terminating

7  Plaintiff's employment.[5]   This evidence was presented to the court and discussed

8  in conjunction with denial of the Defendant's motion for summary judgment and

9  was presented again at trial.  After Plaintiff's Treatment Coordinator Assistant

10  position was eliminated, an Admitting Assistant position came open with GrIS.

11  Plaintiff applied for this position and was interviewed, but was not hired.  Instead,

12  out of a total of 96 applicants, Grant County hired a temporary employee who had

13  started only a few months earlier and in fact had been hired to perform some of the

14  Plaintiff's duties while she was on FMLA leave.  Defendant never articulated a

15  compelling reason why the temporary employee was hired instead of the Plaintiff

16  who spent significantly more time at PARC and had greater relevant experience.[6]

17  Jalane Christian-Stoker testified that Plaintiff was among six individuals

18  interviewed by an interview committee.  Christian-Stoker was not on the

19  committee and had no input who should be hired.  According to Christian-Stoker,

20  based on the standard interview questions asked of each interviewee, Plaintiff

21  _____

22  [5]  The jury was instructed that "[a]n employer's good faith or lack of

23  knowledge that its conduct violates FMLA does not protect it from liability."

24  (Instruction No. 8 at ECF No. 58).  Accordingly, the court cannot assume the

25  jury's verdict establishes a lack of good faith on the part of Defendant.

26  [6]  Plaintiff had been a secretary/receptionist for four years at PARC before

27  being promoted to Treatment Coordinator Assistant in February 2009.  There was

28  testimony from Jennifer Lane that the duties advertised regarding the Admitting

Assistant position were very similar to those required of the secretary/receptionist.

**ORDER DENYING MOTION**
**FOR A NEW TRIAL, *INTER ALIA* - 7**

scored the lowest.  No details were provided, however, as to what that actually
meant.  Tammie Hechler and Susan Wolf, either or both of whom may have been
on the interview committee, offered no testimony regarding this subject.

Consistent with her deposition testimony, Jennifer Lane, the Director of
PARC when the temporary employee was hired, testified at trial there was a
financial disincentive to hire a temporary employee because doing so necessitated
payment of a fee to the employment agency in order to gain a release from the
employment contract.   Furthermore, PARC was not required to keep the
temporary employee for the full six months of the contract.  Christian-Stoker
testified she thought the temporary employee could not be terminated prior to the
expiration of the contract, but she did not recall anyone on the staff telling her so,
and she never considered the possibility of terminating the temporary employee's
position and moving the Plaintiff into that position (receptionist) which the
Plaintiff had previously performed.  Furthermore, it bears noting that although
Plaintiff applied for the Admitting Assistant position within six months of being
laid off, and per the Grant County employment handbook (Sections 5.5 and 5.6)
was entitled to consideration for the position without the need to formally apply
and interview for the position, the County nonetheless required Plaintiff to apply
and interview for the same.[7]

Even assuming Grant County acted in subjective good faith because of
budgetary concerns, its conduct was not objectively reasonable.  Although an
employee is not guaranteed continued employment while on FMLA leave, the
termination of an employee while on such leave should prompt an employer to be

---

[7]  In her letter to Plaintiff dated September 2, 2009, informing Plaintiff she
was being laid off, Christian-Stoker advised that Plaintiff would be considered for
recall if a suitable position became available and provided she filed a written
request with Human Resources to be considered for recall.

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 8**

extra concerned and careful about the legality of its conduct.  The record shows
Grant County did not exhibit such care and caution even though the only two
employees terminated in the merger of PARC and GrIS (Plaintiff and Jennifer
Lane) were both on FMLA leave when their positions were eliminated.[8]  Tammie
Hechler, Human Resources Director for Grant County at the relevant time,
acknowledged her job required her to be familiar with the FMLA, and specifically
the regulations pertaining to treatment of employees while on such leave.  Yet she
testified she was uncertain whether she knew at the relevant time (summer of
2009) what those regulations were.  Although she thought it was likely she did
some research on the issue, she could not remember what she found out.  She
could not recall advising the county commissioners about the issue at the relevant
time.  She could not remember speaking to the county commissioners about the
fact the restructuring proposal called for the layoffs of employees on FMLA leave.
To her recollection, Hechler could not remember consulting with Christian-Stoker
or anyone from GrIS before recommending the elimination of positions to the
county commissioners.  Susan Wolf is an employee in the Human Resources
Department for GrIS.  She testified she did not give human resources advice to
Christian-Stoker and that they would consult with Hechler whenever questions
arose about hiring, firing, and layoff decisions.  Wolf does not recall ever being
involved in a discussion regarding the Plaintiff's FMLA status.  Wolf believed she
and Christian-Stoker consulted with Hechler regarding the layoff of somebody on
FMLA leave, but was not certain about it.

    Defendant has not overcome the presumption that liquidated damages
should be awarded to Plaintiff.  It has not met its burden of proving that its

---

[8]  Lane is not a Plaintiff in the captioned matter and the court intends no
comment, explicit or implicit, regarding the propriety of the termination of her
employment.

**ORDER DENYING MOTION**
**FOR A NEW TRIAL, *INTER ALIA* - 9**

conduct was objectively reasonable.  See *Cooper*, 458 F.3d at 1287 (employer's conduct not reasonable where court administrator had never consulted the FMLA or its implementing regulations, personnel director had not read the statute or regulations, and there had been no consultation with an attorney).  It is important to emphasize that in evaluating the objective reasonableness of an employer's conduct for the purpose of determining whether liquidated damages should be awarded, a factfinder has already found there has been a violation of the FMLA.

**CONCLUSION**

Based on the foregoing, Defendant's Motion To Set Aside Jury Verdict And For A New Trial (ECF No. 83) is **DENIED** and Plaintiff's Motion For Award Of Front Pay, Interest And Liquidated Damages (ECF No. 69) is **GRANTED**.

Prejudgment interest through November 1, 2011 on the compensatory damages awarded by the jury ($27,712.67) amounts to $1,919.19[9], for a total of $29,631.86.  Plaintiff is awarded an additional equivalent amount as liquidated damages, plus front pay of $18,255.00.  Therefore, the total amount awarded to Plaintiff and against Defendant is $77,518.72 ($29,631.86 x 2 + $18,255.00)[10] together with post judgment interest as provided by law from and after the date hereof.

//

//

//

//

---

[9] The daily amount of interest is $2.47.

[10] A separate order and judgment will address Plaintiff's Motion For Attorneys' Fees And Costs (ECF No. 72)

**ORDER DENYING MOTION**
**FOR A NEW TRIAL, *INTER ALIA* - 10**

**IT IS SO ORDERED**.  The District Executive is directed to enter judgment accordingly and to forward copies of the judgment and this order to counsel of record.

**DATED** this ___2nd___ day of November, 2011.

*s/Lonny R. Suko*
—————————————————
LONNY R. SUKO
United States District Judge

**ORDER DENYING MOTION
FOR A NEW TRIAL, *INTER ALIA* - 11**